ELLEN F. ROSENBLUM
Attorney General
NICK M. KALLSTROM #050023
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 947-4700
Fax: (503) 947-4794
Email: Nick.M.Kallstrom@doj.state.or.us

Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ERIC VAUGHN BREECE,<br><br>    Petitioner,<br><br>    v.<br><br>STATE OF OREGON,<br><br>    Respondent. | Case No. 2:19-cv-00866-AR<br><br>RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS |

## I.  INTRODUCTION

Petitioner has filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, challenging his state-court convictions on three counts each of Sexual Abuse, Rape, Sodomy, and Sexual Penetration, all in the first degree. In his habeas petition, petitioner alleges four claims for relief. However, as explained below, petitioner failed to file his petition within the time permitted under 28 U.S.C. § 2244(d), and has failed to establish that he is entitled to equitable tolling. Furthermore, even if his petition had been timely filed, petitioner acknowledges that he did not fairly present his second, third, and fourth grounds for relief during the course of his state-court proceedings. Accordingly, those claims have been procedurally defaulted. And his first ground for

Page 1 -   RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS
      NMK/kk4/493102007

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4794

relief was denied in a state-court decision that is entitled to deference here. For all of those reasons, petitioner's claims should be denied, and his federal habeas petition should be dismissed with prejudice.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner was indicted by a Washington County grand jury on several counts relating to the sexual abuse of CP, a minor girl. (Ex. 102). Prior to trial, the State dismissed some of the counts, leaving three counts each of Rape, Sodomy, Sexual Abuse, and Unlawful Sexual Penetration, all charged in the first degree. (Ex. 104 at 31). Petitioner initially proceeded to a jury trial in August 2011. (*Id.* at 10). However, as explained below, midway through the trial, petitioner ultimately elected to plead guilty to the charges.

### A. Trial-court proceedings

At trial, Detective Grose testified that he received a report that CP had disclosed she had sexual contact with petitioner. (*Id.* at 102). Detective Grose met with CP and arranged for her to conduct a recorded phone call with petitioner, during which she and petitioner discussed the sexual relationship they had been having. (*Id.* at 108-09). That recording was received as an exhibit and played for the jury. (*Id.* at 73-84, 112).

During the phone call, CP asked petitioner to admit that they had sexual contact:

"[CP]: I want you to admit that you did what you did, from the time I was eight until the time I was 16, like, I want you to admit – for you to admit to raping me, I want you to admit to having sexual abuse, I want you to admit to anal, and oral and all of that."

(*Id*. at 77-78). Petitioner then admitted to some of that contact:

"[PETITIONER]: You – okay, as far as anal goes, you had asked me for that. . . . You asked me what it was like and you asked me to. I don't know if you remember that, but you asked me to do that. But do I admit to it? Yes, I'll admit to it."

(*Id*.). CP then asked petitioner to admit that he had her lick his penis when she was eight years old, and that, after that, the oral sex and the "penetration" started happening. (*Id*.). Petitioner

Page 2 -   RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS
   NMK/kk4/493102007

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4794

asked CP to confirm that that the call was not being recorded. After CP responded, "Why would this phone call be recorded, are you serious?" petitioner stated, "[Y]eah, I admit it, okay? But I've never once denied it." (*Id*. at 79).

Approximately a week later, detectives arrested petitioner and conducted a recorded interview. That recording was also received as an exhibit and played for the jury. (*Id.* at 122-211). In that interview, petitioner admitted that he had oral and vaginal sex with CP, guessing that it started when she was nine or ten years old, but acknowledging that it "could very well" have started when she was eight years old, as she alleged. (*Id.* at 183-85, 195). Petitioner stated that he had sexual contact with CP approximately twice a month, on and off over a period of five years. (*Id*. at 184-86). When asked to estimate how many times he had had vaginal sexual intercourse with CP, petitioner estimated that he had done so 75 times, agreeing that he likely also touched her breasts or vagina on each occasion. (*Id*. at 188, 190). Petitioner also agreed that he might have had oral sex with CP 35 or 40 times, and that he once had anal sexual intercourse with her. (*Id*. at 189-90). Petitioner claimed that sometimes CP would "come up to me, and sometimes I initiated it[,]" explaining that "[i]t just happened[,]" and "[f]rom what I can remember she seemed to like it." (*Id.* at 199-200).

After the recordings had been played for the jury and Detective Grose had completed his direct examination testimony, the court recessed. When they returned from the recess, trial counsel informed the trial court that he had spoken with petitioner after they had observed the jurors listen to the tape recordings. (*Id.* at 215). Noting that "the very last vestige of goodwill" towards petitioner would be gone if the victim were forced to testify, he advised petitioner that this was his last opportunity to "get off the train and throw himself at the mercy of the court." (*Id*. at 213). Petitioner told the trial court that it was his decision to plead guilty to the remaining counts. (Tr. 216).

Trial counsel also explained that petitioner believed that the two recordings played for the jury had been tampered with. (*Id*. at 214). And although trial counsel acknowledged that he had

Page 3 -   RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS
     NMK/kk4/493102007

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4794

"no evidence" to support petitioner's belief, he requested that sentencing be set over for 30 days to allow the defense adequate time to have the recordings analyzed. (*Id.* at 215). The trial court advised petitioner that if that analysis revealed tampering, the court "would be setting some type of a hearing to deal with it." (*Id.* at 221). The trial court then accepted petitioner's guilty pleas and set over sentencing for approximately two months. (*Id.* at 224-29).

Before sentencing, trial counsel had copies of the two recordings analyzed at Audio Forensic Center by Durand R. Begault, Ph.D.[1] (Ex. 122). Dr. Begault subjected the recordings to waveform analysis, spectral analysis, and critical listening, concluding as follows:

> "The analyses of the recordings * * * indicate that they are consistent with uninterrupted, continuous recordings of contemporaneous events. There are no apparent discontinuities caused by the recording mechanism consistent with a pause or stop action on a recorder, or any events consistent with digital editing. Analysis of the speech signals as well as the lexical structure (the 'back and forth' of the conversation and within each individual's utterances) showed no irregularities. In several of the instances, there are also co-located background sounds (such as the other talker) that are uninterrupted."

(*Id.* at 2). Dr. Begault also reviewed written transcripts of both recordings, and petitioner's annotations concerning the places where he believed the recording was incorrect. Regarding those annotations, Begault stated,

> "Some of the annotations were based on [petitioner]'s memory of the conversation as having occurred differently. Research into memory indicates that it is in fact malleable; persons are unable to "play back" memory in a manner similar to a recording. My analysis did not find any objective evidence to support any of the annotations that are based on [petitioner]'s memory of the statements being different other than as transcribed."

(*Id.*).

At petitioner's sentencing hearing, trial counsel submitted Dr. Begault's report, but explained that Dr. Begault had been unable to "unequivocally dismiss the possibility" that the copies of the recordings "masked the potential of alterations that might have been done in the original recordings." (Ex. 104 at 235). Although trial counsel acknowledged that Dr. Begault

---

[1] According to trial counsel, Dr. Begault had been an investigator for the National Security Administration (NSA). (Ex. 120 at 3).

Page 4 -   RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS
          NMK/kk4/493102007

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4794

"thought that likelihood was small in the extreme," he requested a one-month set over to enable Dr. Begault to review the original recordings. (*Id.* at 235-36). The trial court denied that request, stating "there is nothing in that report that's any indication that there is any problem with those tapes." (*Id.* at 236). Trial counsel then moved for leave for petitioner to withdraw his plea on the ground that he entered it under duress because he "had no other way to proceed." (*Id.* at 237). The trial court denied that request as well, reminding petitioner that the court had gone over the plea petition with petitioner "in great detail" and had specifically asked if there had been any threats or promises that motivated petitioner to plead guilty, and that petitioner had assured the court that there were none. (*Id.* at 238-39).

The trial court imposed 75-month sentences on each of petitioner's three convictions for Sexual Abuse in the First Degree, the mandatory-minimum sentence under ORS 137.700(2)(a)(Q). For his convictions on three counts each of Rape in the First Degree, Sodomy in the First Degree, and Unlawful Sexual Penetration in the First Degree, the trial court imposed 100-month sentences, the mandatory-minimum sentences under ORS 137.700(2)(a)(K), (M), and (O). The trial court ordered that petitioner serve a number of those sentences consecutively, for a total of 420 months of incarceration. (Ex. 101 at 7). The judgment of conviction was entered on January 9, 2012. (Ex. 101).

### B. Direct Appeal

Following the entry of the judgment of conviction, petitioner exchanged letters with an appellate attorney at the Office of Public Defense Services (OPDS), Irene Taylor, in which she informed petitioner that "the appellate courts **only** have authority to review issues regarding the sentence imposed from a guilty plea." (ECF No. 46-1 at 55 (boldface type in original)); *see also* ORS 138.050 (allowing appeal of guilty plea only where defendant makes "colorable showing" that sentence "exceeds the maximum allowable by law" or "[i]s unconstitutionally cruel and unusual"). On March 20, 2012, Taylor sent petitioner a letter informing him that she would not

be filing a notice of appeal, explaining as follows:

> "Without an objection to the sentences imposed, we are unable to identify a colorable claim of error. I am sorry to inform you that based on the information available to us at this time we are unable to file a notice of appeal in your case. We will be closing your case on April 3, 2012."

(ECF No. 46-1 at 51).

In that same letter, Taylor also advised petitioner as to his collateral remedies under state and federal law, highlighting the one-year limitation period under federal law: "Please note that if you wish to file both post-conviction and federal habeas corpus, you should file post-conviction as soon as practical, because there is a one-year time period for filing federal habeas corpus relief." (*Id.*). The letter also advised petitioner that attorneys at OPDS do "not practice in the federal courts" and "are not experts in the area of federal law and procedure[,]" encouraging petitioner to contact the Federal Public Defender regarding any "questions about the availability of federal remedies[.]" (*Id.*).

    **C.**    **Post-Conviction Relief**

On April 4, 2014, petitioner filed a petition for post-conviction relief (PCR). (Ex. 105). In his PCR petition, petitioner asserted that he had filed a direct appeal, but that his appeal had been closed on April 3, 2012, citing the letter from Taylor, the OPDS appellate attorney. (*Id.* at 2). On April 15, 2014, the PCR court issued an Order to Show Cause, stating that it appeared that the petition was time-barred under ORS 138.510 (requiring PCR petitions to be filed within two years of entry of judgment of conviction). (Ex. 106).

After the PCR court issued the show-cause order, petitioner again wrote to OPDS in a letter dated April 17, 2014, acknowledging that OPDS had closed his file on April 3, 2012, but asking when his case had been closed by the courts. (ECF No. 46-1 at 46). He sent a similar letter on May 12, 2014. (*Id.* at 44). Taylor responded first by summarizing their correspondence back in early 2012, and then noting: "We heard nothing further from you until April 23, 2014, when we received another letter from you requesting copies of your trial court documents. Our

Page 6 -   RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS
    NMK/kk4/493102007

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4794

records show those were sent to you on April 30, 2014." (*Id.* at 43).

On May 29, 2014, the PCR court entered a judgment, dismissing petitioner's PCR petition as "an improper time-barred Petition under ORS 138.510." (Ex. 107). The PCR court also dismissed the PCR petition on the basis that it "failed to state a claim upon which relief may be granted and may be dismissed under ORS 138.525." (*Id.*). Petitioner appealed, and the Oregon Court of Appeals vacated the PCR court's judgment because "the post-conviction court's judgment in this case is ambiguous regarding the reason or reasons for dismissing the petition." *Breece v. Amsberry*, 279 Or. App. 648, 651 (2016) (at Ex. 111).

On remand, petitioner's PCR petition was twice amended by appointed counsel. (Exs. 113-14). In his second-amended petition, petitioner's sole claim was as follows:

> "Trial counsel unreasonably failed to object to the admission of both the pretext phone call recording and the interview admission recording as evidence. If counsel had objected to the admission of the evidence, he would have had an opportunity to bring the Petitioner's tampering concern to the court's attention and provide a basis for the court to exclude the admission of the evidence or request for further forensics of the evidence *before* admission."

(Ex. 114 at 4). Respondent responded to the claim on the merits, noting that petitioner had not presented any evidence that the recordings had been tampered with. (Ex. 118 at 11-12). The PCR court denied relief. (Ex. 124).

Petitioner appealed, and appointed counsel filed a brief pursuant to *State v. Balfour*, 311 Or. 434 (1991), to which petitioner appended a "Section B" brief.[2] (Ex. 125). Respondent interpreted petitioner's filing as raising the claim he had alleged in his PCR petition. (Ex. 126 at 6 n. 1). The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme

---

[2] As explained in *Ryder v. Hill*, 2008 WL 2381677 (D. Or. 2008), when appointed counsel concludes that only frivolous issues exist on appeal, the *Balfour* process allows counsel to meet the constitutional requirement of active advocacy without violating rules of professional conduct. "Section A" of a *Balfour* brief is signed by counsel and must contain a statement of the case sufficient to apprise the court of the jurisdictional basis for the appeal, but it contains no assignments of error or argument. *See Balfour*, 311 Or. at 451-52. "Section B" of a *Balfour* brief is signed only by the appellant and is a presentation of the issues that appellant seeks to raise but that counsel considers to be frivolous. *Id.*

Page 7 -   RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS
          NMK/kk4/493102007
                          Department of Justice
                          1162 Court Street NE
                          Salem, OR 97301-4096
                          (503) 947-4700 / Fax: (503) 947-4794

Court denied review. (Exs. 128-29). The appellate judgment issued on March 28, 2019. (Ex. 129).

### D. Federal Habeas Petition

On June 4, 2019, petitioner filed the federal habeas petition that initiated this case.[3] (ECF No. 1). Shortly thereafter, on June 14, 2019, this Court issued an Order to Show Cause, noting that it appeared from the face of the petition that petitioner had failed to file his petition within the one-year limitation period pursuant to 28 U.S.C. § 2244(d), and ordering petitioner to "show cause in writing within 60 days of the date of this Order why his Petition for Writ of Habeas Corpus should not be summarily denied as untimely." (ECF No. 5 at 3).

On March 30, 2022, petitioner filed a Response to Order to Show Cause, acknowledging that his habeas petition was not timely filed, but arguing that he is entitled to equitable tolling of the limitation period. (ECF No. 46). On May 31, 2022, respondent was served with the habeas petition that initiated this case. (ECF No. 48). As discussed below, petitioner has failed to demonstrate his entitlement to equitable tolling, and his habeas petition should therefore be dismissed as untimely. In any event, as explained below, all of his claims are either procedurally defaulted or without merit.

## III. PETITONER FAILED TO FILE HIS FEDERAL HABEAS PETITION WITHIN THE TIME PERMITTED UNDER 28 U.S.C. § 2244(d).

Under 28 U.S.C. § 2244(d), "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to a judgment of a State court." The limitation period begins to run on the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. § 2244(d)(1)(A). The limitation period is statutorily tolled while a "properly filed" application for PCR or other collateral relief is pending. § 2244(d)(2). Thus, time elapsed after the conviction is final and

---

[3] Petitioner declined to include the date on which he signed his habeas petition, nor did he otherwise indicate when he handed the petition to prison authorities for filing. (ECF No. 1 at 14).

Page 8 -   RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS
           NMK/kk4/493102007

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4794

before collateral filing, and time after the final disposition of any state collateral proceedings and before the filing of the federal habeas petition counts against the year. *Nino v. Galaza*, 183 F.3d 1003, 1006-07 (9th Cir. 1999).

Here, petitioner's judgment of conviction was entered on January 9, 2012. Under ORS 19.255(1), petitioner had 30 days within which to file a Notice of Appeal. Because he did not file a Notice of Appeal, the judgment of conviction became final for the purposes of § 2244(d)(1) on February 8, 2012, when petitioner's ability to seek direct review had expired. The limitation period expired a year later, on February 8, 2013.[4]

Petitioner filed his initial PCR petition on April 4, 2014, or 786 days after his conviction became final. (Ex. 105). Because his second-amended PCR petition was ultimately addressed on the merits, the limitation period was tolled during the pendency of his PCR proceedings. 28 U.S.C. § 2254(d)(2). As noted above, the appellate judgment in the PCR proceedings, affirming the denial of relief, issued on March 28, 2019. (Ex. 129). Petitioner then waited an additional 68 days to file his federal habeas petition, having done so on June 4, 2019. (ECF No. 1). Thus, in total, petitioner waited 854 untolled days to file his federal habeas petition, which exceeds the 365 days available under 28 U.S.C. § 2244(d).

**IV. PETITIONER HAS FAILED TO DEMONSTRATE THAT HE IS ENTITLED TO EQUITABLE TOLLING.**

In his *Response to Order to Show Cause*, petitioner asserts that, although Taylor (the appellate attorney at OPDS), told him that she was not going to file a Notice of Appeal, he nevertheless "believed that there would be a formal notification from the court when that appeal

---

[4] In his *Response to Order to Show Cause*, petitioner suggests that his conviction was not final until 90 days had elapsed for the purpose of seeking a writ of *certiorari* in the U.S. Supreme Court. (ECF No. 46 at 2, 6). However, because petitioner did not pursue a direct appeal, he could not have petitioned for a writ of *certiorari*. *See Gonzalez v. Thaler*, 565 U.S. 134, 154 (2012) ("We can review . . . only judgments of a 'state court of last resort' or of a lower state court if the 'state court of last resort' has denied discretionary review. . . We therefore decline to incorporate the 90-day period for seeking certiorari in determining when [petitioner]'s judgment became final.") (quoting U.S. Sup. Ct. Rule 13.1 and 28 U.S.C. 1257(a)).

Page 9 -   RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS
           NMK/kk4/493102007

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4794

concluded." (ECF No. 46 at 8). Thus, he argues that he is entitled to equitable tolling for "the period during which [petitioner] was waiting for notification from Taylor or the court" that his direct appeal had concluded. (*Id.* at 10).

The Supreme Court has explained that a habeas petitioner may be entitled to equitable tolling of the § 2244(d) limitation period if he establishes "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). The Ninth Circuit has observed that "equitable tolling is unavailable in most cases and is appropriate only if *extraordinary* circumstances beyond a prisoner's control make it impossible to file a petition on time." *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (emphasis in original; internal quotation marks and citation omitted). And petitioner "bears the burden of showing that this extraordinary exclusion should apply to him." *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003) (citation omitted). "Indeed, the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." *Id.* (citation and internal quotation marks omitted).

As discussed below, petitioner has failed to demonstrate that an "extraordinary circumstance" prevented him from timely filing his federal habeas petition, or that he exercised reasonable diligence in pursuing collateral relief.

### A. Petitioner has failed to establish that an "extraordinary circumstance" prevented petitioner from timely filing his federal habeas petition.

Petitioner apparently takes the position that his mistaken belief that a direct appeal was pending constitutes an "extraordinary circumstance" that entitles him to equitable tolling. To support his argument, petitioner relies primarily upon his own declaration and the letters he exchanged with Taylor.

In his declaration, petitioner avers that he told his trial counsel at sentencing that he wanted to pursue a direct appeal and "understood from my discussion with him that something would be filed on my behalf with the courts to begin the appeal." (ECF No. 46-1 at 38).

Page 10 -  RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS
    NMK/kk4/493102007

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4794

Petitioner does not claim that trial counsel had indicated that he would be making the necessary filings to initiate the appeal. Indeed, petitioner "understood from [his] discussion" with trial counsel that trial counsel "would not be the one to represent me on appeal." (*Id.*). Petitioner was "thereafter contacted by attorney Irene Taylor about my appeal case." (*Id.*).

To the extent that petitioner believed a direct appeal had been initiated by trial counsel, petitioner's exchanges with Taylor should have dispelled that belief. In her initial letters, Taylor explained to petitioner that, given his guilty pleas, the issues he sought to raise were not cognizable on direct appeal. (ECF No. 46-1 at 55). And in her letter dated March 20, 2012, Taylor explained that she was "unable to identify a colorable claim of error[,]" was "unable to file a notice of appeal in your case[,]" and would be "closing your case on April 3, 2012." (*Id.* at 51).

Under these circumstances—where Taylor told petitioner that a Notice of Appeal would not be filed and that his case would be closed—it was not reasonable for petitioner to believe that an appeal was nevertheless pending. *See Ford v. Pliler*, 590 F.3d 782, 789 (9th Cir. 2009) ("A petitioner's misunderstanding of accurate information cannot merit relief, as equitable tolling requires a petitioner to show that some 'extraordinary circumstance' beyond his control caused his late petition, and this standard has never been satisfied by a petitioner's confusion or ignorance of the law alone." (cleaned up)). To the extent that petitioner's lack of legal sophistication contributed to that unreasonable belief, his lack of sophistication does not constitute an "extraordinary circumstance" that now entitles him to equitable tolling of the statute of limitation. *See Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) (holding that a "lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling."); *McGrew v. Miller*, 2022 WL 3903424 *3 (D. Or. Aug. 30, 2022) ("To the extent petitioner misunderstood the information provided by PCR counsel, 'a pro se petitioner's lack of legal sophistication is not, by itself, extraordinary circumstance warranting equitable tolling.'" (quoting *Rasberry*)). Moreover, when Taylor told petitioner that she would not be filing a Notice

Page 11 - RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS
NMK/kk4/493102007

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4794

of Appeal, she also advised him of the collateral remedies he could pursue, further indicating that a direct appeal was not pending, and that collateral review would be the proper avenue to challenge his convictions or sentence. (ECF No. 46-1 at 51).

In short, petitioner has failed to demonstrate that an extraordinary circumstance intervened to prevent petitioner from timely filing his habeas petition. Taylor gave petitioner accurate advice. Petitioner's failure to follow that advice—whether due to misunderstanding or otherwise—does not warrant equitable tolling.

> **B. Petitioner has failed to demonstrate that he exercised the requisite diligence for equitable tolling.**

When Taylor advised petitioner of his collateral remedies in the letter dated March 20, 2012, she stressed the one-year limitation period applicable to federal habeas proceedings, writing: "Please note that if you wish to file both post-conviction and federal habeas corpus, you should file post-conviction as soon as practical, because there is a one-year time period for filing federal habeas corpus relief." (ECF No. 46-1 at 51). Her letter advised petitioner to "call or write" if he had questions, explaining that her office accepted collect calls. (*Id.* at 52). And the letter likewise gave him contact information for the Federal Public Defender if he had questions about filing a federal habeas corpus petition. (*Id.*). But petitioner has not presented evidence that, after Taylor sent that letter, he sought out advice from anyone for over two years. *See Barger v. Nooth*, 2017 WL 4836517 *3 (July 19, 2017) (finding lack of diligence where petitioner failed "to take advantage" of appellate counsel's invitation "to call his appellate attorney collect from prison if he had questions" about the effect of a court decision on the federal statute of limitation).

On April 4, 2014—over two years after his conviction became final—petitioner filed a PCR petition. (Ex. 105). On April 15, 2014, the PCR court issued an order directing petitioner to show cause why his petition should not be dismissed as untimely. (Ex. 106). After that show-cause order, petitioner again began to write Taylor, requesting his file materials and asking

Page 12 - RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS
NMK/kk4/493102007

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4794

when his appeal was "closed by the courts." (ECF No. 46-1 at 43, 46). But, by that time, the limitation period under 28 U.S.C. § 2244(d) had been expired for over a year.

Petitioner contends that, during that two-year period, he had been awaiting "formal notification" from the Oregon courts that his appeal had concluded. (ECF No. 46 at 8). But, as noted above, in light of Taylor's letter advising him that no direct appeal had been filed, petitioner's decision to wait for over two years for the court to issue a document confirming the conclusion of his direct appeal was not reasonable. And by waiting for over two years, with no indication in the record that he ever contacted either the Oregon courts or an attorney concerning the status of his appeal, petitioner has failed to demonstrate that he exercised the diligence necessary to entitle him to equitable tolling. *Compare Holland v. Florida*, 560 U.S. 631, 653 (2010) (finding diligence in part because the petitioner "wrote his attorney numerous letters seeking crucial information") *with Vaughan v. Nooth*, 2015 WL 3993158 *4 (D. Or. June 20, 2015) (finding a lack of diligence where petitioner "offers no evidence he diligently sought information about his legal rights from anyone at all.").

The Court has explained that, "[u]nder long-established principles, petitioner's lack of diligence precludes equity's operation." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Because petitioner failed to exercise reasonable diligence here, equitable tolling should be denied.

V.    **PETITIONER'S SECOND, THIRD, AND FOURTH GROUNDS FOR RELIEF HAVE BEEN PROCEDURALLY DEFAULTED.**

In his second, third, and fourth grounds for relief, petitioner alleges claims that he acknowledges he did not raise on direct appeal or during the course of his PCR proceedings. (ECF No. 48-2 at 6-10). Because he could not fairly present these claims to Oregon's courts now, they have been procedurally defaulted. Thus, even if petitioner had timely filed his petition, his second, third, and fourth grounds would not entitle him to relief.

Page 13 - RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS
NMK/kk4/493102007

### A. Applicable law regarding procedural default.

Under 28 U.S.C. § 2254(b)(1), an application for a writ of habeas corpus "shall not be granted" unless "the applicant has exhausted the remedies available in the courts of the State[.]" To satisfy the exhaustion requirement, a petitioner must "fairly present" his federal claims in state court "to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995). As part of that requirement, a petitioner is obligated to "present[] the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby affording the state courts a meaningful opportunity to consider allegations of legal error." *Casey v. Moore*, 386 F.3d 896, 915-16 (9th Cir. 2004) (citing *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986)). As the Supreme Court has recently explained, "[o]rdinarily, a state prisoner satisfies this exhaustion requirement by raising his federal claim before the state courts in accordance with state procedures." *Shinn v. Ramirez*, 142 S.Ct. 1718, 1732 (2022).

If a petitioner can present a claim to the Supreme Court of a State, he must do so to *properly* exhaust that claim. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999); *see also Castille v. Peoples*, 489 U.S. 346, 351-52 (1989) (by including particular federal claim for first time in petition for discretionary review to state supreme court, petitioner did not "fairly present" claim to state court).

If a petitioner fails to "fairly present" his federal claims to each available state court and can no longer do so under state law, then the petitioner's state-court remedies are "technically exhausted" because a state remedy is no longer available. *Shinn v. Ramirez*, 142 S.Ct. 1718, 1732 (2022). But the claims have been procedurally defaulted because the claims were not and cannot be *properly* exhausted. *O'Sullivan*, 526 U.S. at 848. The Court has explained that under the procedural default doctrine, "federal courts generally decline to hear any federal claim that was not presented to the state courts 'consistent with the State's own procedural rules.'" *Shinn*, 142 S.Ct. at 1718 (quoting *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)).

Page 14 - RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS
NMK/kk4/493102007

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4794

**B. Because petitioner failed to fairly present his second, third, and fourth grounds for relief to Oregon's courts—and would be procedurally barred from doing so now—his claims are procedurally defaulted.**

In his second ground for relief, petitioner faults his PCR counsel for failing to submit certain affidavits at his PCR trial.[5] In his third ground for relief, petitioner disputes the accuracy of the trial transcripts. And, in his fourth ground for relief, petitioner alleges a claim against the Oregon State Bar, faulting it because "they refuse to look into the matter[.]"

In his federal habeas petition, petitioner acknowledges that he did not present these claims during the course of his state-court proceedings. (ECF No. 48-2 at 7-10). And he would be procedurally barred from presenting these claims to Oregon's appellate courts now. *See e.g.*, ORS 138.071(1) (requiring direct appeals to be filed within 30 days of judgment of conviction); ORS 138.510(3) (requiring PCR petitions to be filed within two years of entry of judgment of conviction where no direct appeal had been filed). Accordingly, the claims have been procedurally defaulted.

Thus, even if petitioner had timely filed his federal habeas petition, the claims contained in his second, third, and fourth grounds for relief should be denied.

**VII. THE POST-CONVICTION COURT MADE REASONABLE FACTUAL DETERMINATIONS AND REASONABLY APPLIED FEDERAL LAW IN DENYING PETITIONER'S FIRST GROUND FOR RELIEF.**

In his first ground for relief, petitioner alleges that "[i]f [trial counsel] would have asked the specific questions about the copies of the recordings used at trial it would have shown they were altered." (ECF No. 48-2 at 5). Petitioner is apparently attempting to allege the same claim he litigated at his PCR trial. However, as explained below, in denying that claim, the PCR court made reasonable factual determinations and reasonably applied federal law. Accordingly,

---

[5] Petitioner's claim against his PCR counsel is not cognizable here. *See e.g.*, *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions . . . and we decline to so hold today."); *Ortiz v. Stewart*, 149 F.3d 923, 939 (9th Cir. 1998) (explaining that "[t]here is simply no constitutional right to an attorney in a state post-conviction proceeding.").

Page 15 - RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS
NMK/kk4/493102007

petitioner has failed to demonstrate that he is entitled to relief under 28 U.S.C. § 2254(d), as modified by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).

### A. Deference given to state-court convictions.

Under AEDPA, habeas corpus relief "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding."

28 U.S.C. § 2254(d).

In addressing the deference requirements of 28 U.S.C. § 2254(d)(1), the Supreme Court found independent meanings to the "contrary to" and "unreasonable application" clauses of AEDPA. *Williams*, 529 U.S. at 404. The "contrary to" clause permits a federal court to grant habeas relief only if the state court "applies a rule that contradicts the governing law set forth in [its] cases," or, if the state court "confronts a set of facts indistinguishable from [one of its decisions] and nevertheless arrives at a result different from [its] precedent." *Id.* at 405-06. The Court also held that, under the "unreasonable application" clause, a federal court could only grant habeas relief if the state court correctly identified a governing principle of the Supreme Court but applied the principle to the facts of the petitioner's case unreasonably. *Id.* at 413. This standard requires "the state court's application of clearly established law must be objectively unreasonable," not merely "incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). And federal law is "clearly established" only if it is embodied within a *holding* of the United States Supreme Court. *See Thaler v. Haynes*, 559 U.S. 43, 47 (2010) (so providing).

Page 16 - RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS
NMK/kk4/493102007

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4794

Finally, review under § 2254(d)(1) is limited "to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).[6]

Under 28 U.S.C. § 2254(d)(2), deference must also be provided to the state court's reasonable factual determinations. "[A] federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004) (citations omitted). Furthermore, "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010) (citations omitted). In other words, "even if reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the [state] trial court's determination." *Id.* (quoting *Rice v. Collins*, 546 U.S. 333, 341-42 (2006)) (internal quotation marks omitted). The reasonableness of a state court's factual finding is evaluated in "light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2). If the state court's fact-finding process survives this "intrinsic review," the state court's factual findings are presumed correct. *Taylor*, 366 F.3d at 1000; 28 U.S.C. § 2254(e)(1).

In passing AEDPA, Congress intended to alter the habeas corpus field by restricting delays, preventing "retrials" on federal habeas, and giving effect to state convictions to the extent permissible under law. *Williams v. Taylor*, 529 U.S. 362, 404 (2000). To obtain habeas relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*,

---

[6] Section 2254(d) does not require the state court to provide any statement of reasons or explanation for denying relief: "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

Page 17 - RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS
NMK/kk4/493102007

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4794

562 U.S. 86, 103 (2011). Thus, AEDPA sets out a "highly deferential standard for evaluating state court rulings," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2003) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997)), that "demands state-court decisions be given the benefit of the doubt." *Woodford*, 537 U.S. at 24.

> B. The *Strickland* standard under AEDPA.

A claim of ineffective assistance of counsel has two components: first, the petitioner must show that counsel's performance was deficient; and second, the petitioner must show that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Under the first part of the '*Strickland* test,' the petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689. Moreover, counsel's performance must be evaluated from the time of the alleged error. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second part of the test requires the petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is one that is "sufficient to undermine confidence in the outcome." *Id.* Evaluation of a claim under the *Strickland* test is highly deferential: "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Bell v. Cone*, 535 U.S. 685, 698 (2002) (quoting *Strickland*, 466 U.S. at 689) (brackets in original).

> The *Strickland* test has been determined to be clearly established federal law, as determined by the Supreme Court of the United States, for purposes of evaluation under 28 U.S.C. § 2254(d)(1). *Williams*, 529 U.S. at 391. The Court has noted that "[s]urmounting *Strickland's* high bar is never an easy task. . . Establishing that a state

Page 18 - RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS
NMK/kk4/493102007

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4794

court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' . . . and when the two apply in tandem, review is 'doubly' so[.]" *Harrington*, 562 U.S. at 105 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). Thus, in evaluating ineffective-counsel claims under the AEDPA, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

> **C. Petitioner has failed to demonstrate that the PCR court made unreasonable factual determinations or unreasonably applied federal law in denying the claim contained in his first ground for relief.**

In his first ground for relief, alleges that "[i]f [trial counsel] would have asked the specific questions about the copies of the recordings used at trial it would have shown they were altered." (ECF No. 48-2 at 5).

At his PCR trial, petitioner litigated a single claim, alleging that trial counsel unreasonably failed to object to the recordings of the pretext phone call and petitioner's police interview. (Ex. 114 at 4). Petitioner alleged that, had trial counsel done so, he would have had an opportunity to bring the Petitioner's tampering concern to the court's attention and provide a basis for the court to exclude the admission of the evidence or request for further forensics of the evidence *before* admission." (*Id.*). The PCR court denied relief, concluding that trial counsel reasonably declined to object to the recordings on the basis that they had been tampered with, finding that "[t]rial counsel found no evidence of tampering." (Ex. 124 at 2). The PCR court likewise concluded that petitioner had failed to prove prejudice, finding that an objection to the recordings on the basis that they had been altered would not have been granted because "[t]here was no basis for the trial court to grant the objection." (*Id.*).

Petitioner cannot demonstrate that the PCR court made unreasonable factual determinations or unreasonably applied federal law. At his PCR trial, other than his own

NMK/kk4/493102007

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4794

unsupported assertions, petitioner did not present evidence that the recordings had been altered.[7] Indeed, the only evidence on that front was the expert report prepared by Dr. Begault, who found no indications that the recordings had been altered. (Ex. 122). Thus, the PCR court reasonably concluded that petitioner had failed to demonstrate that trial counsel performed deficiently, or that petitioner would have opted to proceed to trial had trial counsel made the meritless objections that petitioner proposes here. Accordingly, even if petitioner's first ground for relief had been included in a timely federal habeas petition, it would not entitle him to relief under 28 U.S.C. § 2254(d).

## VII. CONCLUSION

For the reasons discussed above, petitioner's federal habeas petition was not filed within the time permitted under 28 U.S.C. § 2244(d). Further, as discussed above, all of petitioner's claims are either procedurally defaulted or without merit. Accordingly, petitioner's federal habeas petition should be dismissed with prejudice.

DATED November 16, 2022.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General

*s/ Nick M. Kallstrom*
NICK M. KALLSTROM #050023
Assistant Attorney General
Trial Attorney
Of Attorneys for Respondent

---

[7] Petitioner has attached various documents to his habeas petition, including the statements of Thomas Breece and Taisa Collier. (ECF No. 48-2 at 26-27). Because the statements of those individuals were not before the PCR court, they may not be considered in connection with petitioner's first ground for relief. *Pinholster*, 563 U.S. at 182-83 ("It would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court.").

Page 20 - RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS
NMK/kk4/493102007

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4794