UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

ERIC VAUGHN BREECE,

        Petitioner,

v.

STATE OF OREGON,

        Respondent.

Case No. 2:19-cv-00866-AR

**FINDINGS AND RECOMMENDATION**

**ARMISTEAD, United States Magistrate Judge**

    Eric Vaughn Breece, an adult in custody at the Eastern Oregon Correctional Institution, applies for a writ of habeas corpus, 28 U.S.C. § 2254, challenging his 2011 state convictions on three counts each of rape, sodomy, sexual abuse, and unlawful sexual penetration. As explained below, the application[1] should be denied for two reasons: (1) the application was untimely filed

---

[1] Both parties use the terms "petition" and "petitioner," which are common and traditional terms for federal habeas proceedings. Yet 28 U.S.C. § 2254 uses the terms "application" and "applicant." Accordingly, the court tracks the wording of § 2254 to discuss Breece's habeas proceeding.

and Breece is not entitled to equitable tolling of the limitation period and (2) Breece has failed to establish that the state court made unreasonable factual determinations or unreasonably applied federal law when it rejected his ineffective assistance of counsel claim.

## PROCEDURAL BACKGROUND

On December 6, 2010, a Washington County grand jury indicted Breece on seventeen counts alleging rape and sexual abuse of a girl. (Respondent's Exhibits, ECF No. 59 ("Resp. Ex."), No. 102, pp. 1-3.) Before trial, the State dismissed some counts, leaving three counts each of rape, sodomy, sexual abuse, and unlawful sexual penetration, all charged in the first degree. (Resp. Ex. No. 104, p. 31.) Breece proceeded to a jury trial in August 2011 but, midway through the trial, Breece decided to plead guilty to the charges. Following a November 8, 2011, sentencing hearing, the trial court sentenced Breece to 35 years of imprisonment and ordered him to pay various costs. (Resp. Ex. No. 101.) The judgment of conviction was signed January 3, 2012, but was entered and effective January 9, 2012. (Resp. Ex. No. 101.) A direct appeal was not filed.[2]

On April 4, 2014, Breece petitioned for post-conviction relief (PCR) in state court. (Resp. Ex. No. 105.) On April 15, 2014, the PCR court issued an order to show cause, stating that it appeared that the petition was time-barred. (Resp. Ex. No. 106.) On May 20, 2014, the court dismissed the petition as time-barred and because it failed to state a claim on which relief may be granted. (Resp. Ex. No. 107.) Breece appealed, and the Oregon Court of Appeals vacated the

---

[2] The circumstances surrounding the lack of a direct appeal are discussed below in connection with the timeliness of this action.

Page 2 – FINDINGS AND RECOMMENDATION
*Breece v. State of Oregon*, 2:19-cv-00866-AR

PCR judgment because it was "ambiguous regarding the reason or reasons for dismissing the petition." *Breece v. Amsberry*, 279 Or. App. 648, 651 (2016).

On remand, appointed counsel filed a second amended petition that asserted one claim for relief—trial counsel was ineffective in failing to object to admission of records of a pretext phone call and a police interview. (Resp. Ex. No. 114, p. 4.) The state responded on the merits, and following an evidentiary hearing, the PCR court denied relief. (Resp. Ex. No. No. 124.) Breece appealed, and appointed counsel filed a *Balfour* brief, to which Breece appended a "Section B" brief raising the claim he had alleged in his second amended PCR petition.[3] The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. *Breece v. Amsberry*, 295 Or. App. 522 (2018), *rev. denied*, 364 Or. 409 (2019).

On June 4, 2019, Breece filed his application for a writ of habeas corpus, alleging four grounds for relief. (ECF No. 1.) On June 14, 2019, the court ordered Breece to show cause why the court should not summarily dismiss his application as untimely. (ECF No. 5.) Following extensions of time for Breece to respond, Breece did so on March 30, 2022: He acknowledged that his application was not timely filed but argued for equitable tolling of the limitation period. (ECF No. 46). On May 31, 2022, the court withdrew its show cause order, and the application was served on the state; the withdrawal of the order to show cause was without prejudice to the state's right to assert all affirmative defenses, including timeliness. (ECF Nos. 47, 48.).

---

[3] The *Balfour* procedure provides that appellate counsel need not ethically withdraw when faced with only frivolous issues. Rather, counsel may file Section A of an appellant's brief containing a statement of the case sufficient to "apprise the appellate court of the jurisdictional basis for the appeal." *State v. Balfour*, 311 Or. 434, 451 (1991). The defendant may then file the Section B segment of the brief containing any assignments of error he wishes. *Id*. at 452.

Page 3 – FINDINGS AND RECOMMENDATION
*Breece v. State of Oregon*, 2:19-cv-00866-AR

The state responds to Breece's application by contending that it was not timely filed, that three of the four grounds for relief are procedurally defaulted, and, as to the fourth ground, the state PCR court decision denying relief is entitled to deference such that relief is not warranted on the merits. (ECF 57.) Breece asks that the court equitably toll the limitations period or, alternatively, assume that equitable tolling is appropriate and address the merits of Ground One. (ECF 69.) And as to the merits of Ground One—that trial counsel was ineffective in failing to object to admission of recordings of a pretext phone call and police interview—Breece argues that the PCR court is not entitled to deference because it acted unreasonably in making its credibility determinations. Breece concedes that the claims alleged in Grounds Two, Three, and Four are procedurally defaulted and, with this record, there is no basis for the court to reach those unexhausted claims.

## DISCUSSION

**A.    *Timeliness and Equitable Tolling***

The Antiterrorism and Effective Death Penalty Act (AEDPA) applies a one-year statute of limitations to a petition for writ of habeas corpus "filed by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). The one-year limitation period may be tolled upon a showing "'(1) that [the applicant] has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Equitable tolling is "a flexible, fact-specific" inquiry. *Gibbs v. Legrand*, 767 F.3d 8879, 885 (9th Cir. 2014). The threshold to trigger equitable tolling is "a very high bar, and is reserved for rare cases." *Yeh v. Martel*, 751 F.3d 1075, 1077 (9th Cir. 2014); *see also Spitsyn v. Moore*, 345 F.3d

796, 800 (9th Cir. 2003) (noting that equitable tolling "is justified in few cases"). An applicant thus "bears a heavy burden to show that [he] is entitled to equitable tolling, 'lest the exceptions swallow the rule.'" *Rudin v. Myles*, 781 F.3d 1043, 1055 (9th Cir. 2014) (quoting *Bills v. Clark*, 628 F.3d 1092, 1097 (9th Cir. 2010)).

Breece argues that, because he reasonably believed his trial counsel had filed his direct appeal, but didn't, and that he reasonably believed that he would receive a notification from Taylor when his (nonexistent) direct appeal concluded, the court should equitably toll the filing of his habeas application. In his view, he was being diligent as he waited for notification that his appeal was concluded before filing for PCR and when he waited for PCR proceedings to conclude before applying for federal habeas relief. In sum, it is Breece's view that miscommunication and the dilatory actions of counsel warrant equitable tolling. The court disagrees.

Here, Breece does not clear the "very high bar" needed for entitlement to equitable tolling of the limitations period. Breece submitted a declaration explaining his understanding of the position of his appeal and his efforts to pursue relief on his claims in which he states that, at the 2011 sentencing hearing he instructed trial counsel to file an appeal, which he believed was later filed. (Petitioner's Exhibits, ECF No. 46 ("Pet. Ex.") H, p. 1.) Breece describes this interaction as follows:

> At sentencing, my attorney, Mr. Coran, asked me if I wanted to file an appeal. I said, "yes." I understood from my discussion with him that something would be filed on my behalf with the courts to begin the appeal. I also understood from my discussion with him that he would not be the one to represent me on appeal.

(Pet. Ex. H, p. 1.) Trial counsel did not do so. Instead, after the sentencing but before entry of the judgment of conviction, on December 1, 2011, requested the Office of Public Defense Services (OPDS) to file a direct appeal on Breece's behalf. (Pet. Ex. I. p. 24.)

On January 25, 2012, OPDS attorney Irene B. Taylor sent Breece a letter in which she informed Breece that her office had been notified that he wished to appeal his judgment of conviction, identified the bases on which an appeal from a judgment on a guilty plea could be made, and requested that he respond by identifying why, if any, colorable claims may be present. (Pet. Ex. I, p. 19.) Taylor closed the letter stating, "Finally, please be aware that timeliness is essential. We need to receive your response by February 15, 2012." (*Id*.)

Breece wrote back, explaining that he felt pressured into pleading guilty after tape recordings of a pretext phone call and police interview were admitted into evidence. (Pet. Ex. I, p. 15.) Taylor answered by letter on February 8, 2012, the same day she received Breece's correspondence, in which she explained that the issues Breece raised in his letter could not be addressed on direct appeal and that he may be able to instead address them in a petition for post-conviction relief. (Pet. Ex. I, p. 14.) She again explained what claims could be asserted on appeal and noted that she had contacted trial counsel to ascertain whether a colorable claim had been preserved by objection at sentencing. (Pet. Ex. I, p. 14.) Taylor closed by advising, "If we are not able to determine a colorable claim of error in your case, I will send you information about filing for post-conviction relief. In the meantime, I will advise you once I hear back from your attorney." (Pet. Ex. I, p. 14.)

Breece responded by letter of February 26, 2012, reiterating his claims about the admission of the tape recordings. (Pet. Ex. I, p. 12.) On March 20, 2012, Taylor again wrote

Page 6 – FINDINGS AND RECOMMENDATION
*Breece v. State of Oregon*, 2:19-cv-00866-AR

Breece, stating, "Without an objection to the sentences imposed, we are unable to identify a colorable claim of error. I am sorry to inform you that based on the information available to us at this time we are *unable to file a notice of appeal in your case*. We will be closing your case on April 3, 2012." (Pet. Ex. I, p. 10 (emphasis added).) Taylor also advised Breece of his collateral remedies under state and federal law, and cautioned Breece about the time limitations for doing so: "Please note that if you wish to file both post-conviction and federal habeas corpus, you should file post-conviction as soon as practical, because there is a one-year time period for filing federal habeas corpus relief." (Pet. Ex. I, p. 11.) The letter also advised Breece that OPDS attorneys do not practice in federal courts and encouraged him to contact the Federal Public defender about the availability of federal remedies. (Pet. Ex. I, p. 11.)

      Breece, still believing that his trial counsel had filed the appeal, understood Taylor's communication to mean that she was notifying him that the appeal would eventually be dismissed, despite Taylor's statement that she was "unable to file a notice of appeal in your case." (Pet. Ex. H, p. 1.) Breece took no further action until April 4, 2014, when he filed his petition for state post-conviction relief. (Resp. Ex. No. 105.) On April 17, 2014, Breece wrote Taylor a letter inquiring about the status of his case and noting the pending deadline to show cause in his PCR proceeding:

> You had mailed me a letter stateing [*sic*] you were closing my case on April 3, 2012. My question is when was my case closed by the courts? I never received anything from the courts stating that my case was closed and when it was closed. Just as paperwork had to be filed with the courts to even get you to review my case.
>
> If it's possible a timely response would be greatly appreciated as I am on a timely response back to the courts for my post conviction relief. I have until 5-16-2014 to respond to them.

Page 7 – FINDINGS AND RECOMMENDATION
*Breece v. State of Oregon*, 2:19-cv-00866-AR

(Pet. Ex. H, p. 5.) Taylor did not respond, and on May 12, 2014, Breece wrote to OPDS asking for assistance, explaining his situation:

> I have sent a letter already to Irene B. Taylor to find out when my case was officially closed by the courts. I have only ever received a letter of intent to close my case on April 3rd, 2012. But as of yet have not received anything from the courts ever stateing [sic] when my file was closed. I am currently filing for a PCR and need that date.

(Pet. Ex. I, p. 3.)

On June 16, 2014, Taylor responded to Breece's inquiries with a letter stating:

> I am in receipt of your letter dated May 12, 2014 and received by us on May 20, 2014. I apologize for the delay in responding.
>
> Our office received your request to appeal your conviction on December 1, 2011. The judgment in your case was entered on January 9, 2012. We sent an opening letter to you dated January 25, 2012, and two additional letters dated February 8, and March 20, 2012. Our letters acknowledged receiving two letters from you received on February 8, 2012, and February 29, 2012. I am enclosing copies of our letters to you.
>
> We heard nothing further from you until April 23, 2014, when we received another letter from you requesting copies of your trial court documents. Our records show those were sent to you on April 30, 2014.
>
> As you see, our closing letter advising you of the option of filing a petition for post-conviction relief was sent to you on March 20, 2012.

(Pet. Ex. I, p. 2.)

Those communications reflect that Breece cannot establish that he pursued his rights "diligently," as required for equitable tolling. After receiving notice that he had no colorable claim for a direct appeal and that OPDS would not be filing a notice of appeal on his behalf, Breece waited nearly two years before inquiring again about the status of his case. Even if Breece did not understand that an appeal was never filed, he doesn't explain why he waited so

long. In other words, there is no evidence that Breece acted diligently to obtain notice regarding his state court proceeding. *See Guillory v. Roe*, 329 F.3d 1015, 1018 (9th Cir. 2003) (finding that petitioner was not entitled to equitable tolling due to his lack of diligence); *Hutcherson v. Terhune*, 26 F. App'x 769 (9th Cir. 2002) (affirming dismissal of petition as untimely where petitioner filed his petition over two years after the statute of limitations expired and did not provide evidence "to establish that 'external forces, rather than [his] lack of diligence'" accounted for his failure to timely file) (quoting *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999)); *Benefield v. Ryan*, No. CV-11-438-PHX-ROS (LOA), 2012 WL 3228784, *5 (D. Ariz. July 2, 2012) (where petitioner waited over two years before inquiring as to status of state case and did not explain the delay he did not carry the burden of establishing that he acted diligently).

**B.**     ***Relief on the Merits***

The court chooses to analyze the merits of Breece's claim of ineffective assistance of counsel, which supplies an additional basis for denying it. *See Holland*, 560 U.S. at 645 (the limitation period established in § 2244(d) is not a jurisdictional bar); (*Wichman v. Twenty-Second Jud. Dist. Ct., Carbon Cnty.*, Nos. CV 14-05-BLG-DLC-CSO, CV 14-23-BLG-DLC-CSO, CV 14-25-BLG-DLC-CSO, 2015 WL 4717947, *5 (D. Mont. Aug. 7, 2015) (noting that "neither the doctrine of procedural default nor the federal limitations period pose jurisdictional bars to a hearing on the merits in federal court" because "a federal court may deny claims on the merits regardless of whether they have been presented in state court") (citing 28 U.S.C. § 2254(b)(2);

*Runningeagle v. Ryan*, 686 F.3d 758, 777 n. 10 (9th Cir. 2012); *Lambrix v. Singletary*, 520 U.S. 518, 522-25 (1997); *Lee v. Lampert*, 653 F.3d 929, 933 (9th Cir. 2011) (en banc)).[4]

Breece alleges that trial counsel was ineffective in failing to object to the admission at trial of recordings of a pretext telephone call with the victim and a police interrogation. At trial, an investigating detective testified that he received a report that the victim had disclosed she had sexual contact with Breece. (Resp. Ex. No. 104, p. 102.) The detective met with the victim and arranged for her to record a phone conversation with Breece, during which she and Breece discussed Breece's conduct. (Resp. Ex. No. 104, pp. 108-09.) That recording was received as an exhibit and played for the jury. (Resp. Ex. No. 104, pp. 73-84, 112.)

During the phone call, the victim asked Breece to admit that he had sexually abused and raped her on many occasions:

> [VICTIM]: I want you to admit that you did what you did, from the time I was eight until the time I was 16, like, I want you to admit—for you to admit to raping me, I want you to admit to having sexual abuse, I want you to admit to anal, and oral and all of that.

(Resp. Ex. No. 104, pp. 77-78.) Breece then admitted to some of that sexual abuse:

> [BREECE]: You—okay, as far as anal goes, you had asked me for that. . . . You asked me what it was like and you asked me to. I don't know if you remember, but you asked me to do that. But do I admit to it? Yes, I'll admit to it.

(Resp. Ex. No. 104, p. 78.) The victim then asked Breece to admit that he had her lick his penis when she was eight years old and, after that, the oral genital contact and the penetration started

---

[4] Breece seeks an evidentiary hearing on why equitable tolling is appropriate. However, because he is not entitled to relief on the merits of his claim as addressed below, a hearing is not required. *See Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

happening. (Resp. Ex. No. 104, p. 78.) Breece asked the victim to confirm that the phone call was not being recorded, and after she responded, "Why would this phone call be recorded, are you serious?" Breece responded:

> [BREECE]: Honey, if you really wanted to hang me out to dry, you could hang me out to dry right now, it's over.
>
> * * *
>
> Honey, if you wanted me—if you—yeah, I admit it, okay? But I've never once denied it.

(Resp. Ex. No. 104, p. 79.)

About a week after the phone call, detectives arrested Breece and conducted a recorded interview. That recording was also received as an exhibit and played for the jury. (Resp. Ex. No. 104, pp. 122-211.) During that interview, Breece admitted that he had oral and vaginal contact with the victim, guessing that it started when she was nine or ten years old, but acknowledging that it "could very well" have started when she was eight, as she alleged. (Resp. Ex. No. 104, pp. 183-85, 195.) Breece said that he had sexual contact with the victim approximately twice a month, on and off over five years. (Resp. Ex. No. 104, pp. 184-86.) When asked to estimate how many times there was vaginal penetration of the victim, Breece estimated he had done so 75 times, and agreed that he likely also touched her breasts or vagina each time. (Resp. Ex. No. 104, pp. 188, 190.) Breece also agreed that he might have had oral sex with the victim 35 or 40 times, and that he once had anal sexual intercourse with her. (Resp. Ex. No. 104, pp. 189-90.) Breece stated that sometimes the victim would "come up to me, and sometimes I initiated it[,]" and explained that "[i]t just happened[,]" and "[f]rom what I can remember she seemed to like it." (Resp. Ex. No. 104, pp. 199-200.)

After the tapes had been played for the jury and the prosecutor had completed direct examination of the detective, the court recessed. After the recess, Breece's trial counsel informed the court that he had spoken with Breece after they had observed the jurors listen to the tape recordings. (Resp. Ex. No. 104, p. 215.) Noting that "the very last vestige of goodwill" towards Breece would be gone if the victim were forced to testify, counsel reported that he advised Breece that this was his last opportunity "to get off the train and throw himself at the mercy of the court." (Resp. Ex. No. 104, p. 213.) Trial counsel also explained to the court that Breece believed that the two recordings played for the jury had been tampered with. (Resp. Ex. No. 104, p. 214.) Although trial counsel acknowledged that he had "no evidence" to support Breece's belief, he requested that the court set over sentencing for 30 days to allow the defense adequate time to have the recordings analyzed. (Resp. Ex. No. 104, p. 215.)

The trial court advised Breece that sentencing would not occur for 30-45 days, allowing time for counsel to have the tapes analyzed, and that if the analysis revealed any tampering, the court would set a hearing. (Resp. Ex. No. 104, p. 221.) The court then engaged in an extensive plea colloquy with Breece, accepted his guilty pleas, and set over sentencing for two months. (Resp. Ex. No. 104, pp. 224-29.)

Before sentencing, trial counsel had copies of the two recordings analyzed at Audio Forensic Center by Durand R. Begault, Ph.D., who had once been an investigator for the National Security Administration. Resp. (Exs. 120, p. 3; 122.) Dr. Begault subjected the recordings to waveform analysis, spectral analysis, and critical listening, and concluded the following:

> The analyses of the recordings . . . indicate that they are consistent with uninterrupted, continuous records of contemporaneous events. There are no apparent discontinuities caused by the recording mechanism consistent with a pause or stop action on a recorder, or any events consistent with digital editing of the conversation. Analysis of the speech signals as well as the lexical structure (the "back and forth" of the conversation and within each individual's utterances) showed no irregularities. In several instances, there are also co-located background sounds (such as the other talker) that are uninterrupted.

(Resp. Ex. No. 120, p. 2.) Dr. Begault also reviewed written transcripts of both recordings and Breece's notations concerning the places where he believed the recordings were incorrect. As for these notations, Dr. Begault stated:

> Some of the annotations were based on [Breece's] memory of the conversation as having occurred differently. Research into memory indicates that it is in fact malleable; persons are unable to "play back" memory in a manner similar to a recording. My analysis did not find any objective evidence to support any of the annotations that are based on [Breece's] memory of the statements being different than as transcribed.

(Resp. Ex. No. 120, p. 2.)

At Breece's sentencing, trial counsel submitted Dr. Begault's report, but explained that Dr. Begault had been unable to "unequivocally dismiss the possibility" that the copies of the recordings "masked the potential of alterations that might have been done in the original recordings." (Resp. Ex. No. 104, p. 235.) Although trial counsel acknowledged that Dr. Begault had said "that that likelihood was small in the extreme," counsel requested a one-month set over to enable Dr. Begault to review the original recordings. (Resp. Ex. No. 104, pp. 235-36.) The court denied that request, stating that "there is nothing in that report that's any indication that there is any problem with those tapes." (Resp. Ex. No. 104, p. 236.) Trial counsel then moved for leave for Breece to withdraw his plea on the ground that he entered it under duress because he "had no other way to proceed." (Resp. Ex. No. 104, p. 237.) The court denied that request as

Page 13 – FINDINGS AND RECOMMENDATION
*Breece v. State of Oregon*, 2:19-cv-00866-AR

well, and reminded Breece that the court had gone over the plea petition with Breece in "great detail" and had asked if there had been any threats or promises that motivated Breece to plead guilty, and that Breece had assured the court that there were none. (Resp. Ex. No. 104, pp. 238-39.) The court then sentenced Breece.

In his PCR proceedings, and now in this habeas corpus proceeding, Breece contends that trial counsel's failure to consult an expert before the trial began and failure to object to admission of the tape recordings left Breece without a meaningful opportunity to exercise his right to trial, in effect coercing his mid-trial guilty plea. He contends that, but for trial counsel's failure to prepare or challenge the recordings, Breece would have continued to pursue trial.

An application for a writ of habeas corpus may not be granted unless adjudication of the claim in state court resulted in a decision that was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Under § 2254(e)(1), "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (citing 28 U.S.C. § 2254(e)(1); *see also Sophanthavong v. Palmateer*, 378 F.3d 859, 867 (9th Cir. 2004) ("[B]ecause the state court conducted an evidentiary hearing . . . we are required to defer to the state court's credibility findings.").

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the

Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant relief "if the state identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id*. at 410. Section 2254(d)(1) "preserves authority to issue the writ in cases where there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents. It goes no further." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

In assessing claims of ineffective assistance of counsel, the court uses the general two-part test established by the Supreme Court. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). First, a petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). Because of difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id*. at 689.

Second, a petitioner must show that counsel's performance prejudiced the defense. The appropriate test for prejudice is whether the petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires the petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see*

*also Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice."). When a petitioner claims that his counsel's deficient performance deprived him of a trial by causing him to waive his trial right, the petitioner is prejudiced if there is a reasonable probability that, but for counsel's errors, he would have insisted on going to trial. *Lee v. United States*, 582 U.S. 357, 363 (2017) (citing *Hill*, 474 U.S. at 59).

Although the Supreme Court established in *Strickland* the legal principles that govern claims of ineffective assistance of counsel, it is not the role of the federal habeas court to evaluate whether counsel's performance fell below the *Strickland* standards. *Harrington*, 562 U.S. at 101. Rather, when considering an ineffective assistance of counsel claim on federal habeas review, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Id*. As the Supreme Court explained in *Harrington*, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id*.

At his PCR proceeding, Breece pursued a single claim: trial counsel unreasonably failed to object to the recordings of the pretext phone call and the police interview. (Resp. Ex. No. 114, p. 4.) Breece alleged that "[i]f counsel had objected to the admission of the evidence, he would have had an opportunity to bring [Breece's] tampering concern to the court's attention and provide a basis for the court to exclude the admission of the evidence or request for further forensics of the evidence *before* admission." (Resp. Ex. No. 114, p. 4 (emphasis in original).)

To support his claim, Breece submitted his own declaration. As for the recordings Breece stated as follows:

Page 16 – FINDINGS AND RECOMMENDATION
*Breece v. State of Oregon*, 2:19-cv-00866-AR

> 5. I believe that the recording of the phone conversation has been altered because there are discussions that happened during the phone conversation that are missing from the recording submitted as evidence during the trial.
>
> 6. The statements I made to [the victim] were not completely accurate because I made them for the purpose of gaining her confidence and thereby encouraging her to come home, and not live on the streets, which were not safe.
>
> * * *
>
> 9. I believe that the recording of the interview has been altered because there are discussions that happened during the interview that are missing from the recording submitted as evidence during the trial.

(Resp. Ex. No. 117, p. 2.) Breece explained what took place at trial leading to his entry of the guilty plea as follows:

> 10. I expressed my concerns regarding the tampered recordings to my counsel Mr. Coran continually throughout the trial process.
>
> 11. On August 31, 2011, during day two of my trial, both altered recordings were played before the court without any objection from my counsel.
>
> 12. After a brief recess during trial I changed my plea to guilty and a plea deal was negotiated with the State.
>
> 13. Had my counsel objected to the recordings before they were played during the trial I would have not have changed my plea and would have continued with the trial.

(Resp. Ex. No. 117, pp. 2-3.)

In response, the state submitted a declaration from Coran—Breece's trial counsel. (Resp. Ex. No. 120.) Coran stated that he had received and reviewed both written and audio copies of both the pretext call and the interview, and found nothing unusual or out of the ordinary concerning either one. (Resp. Ex. No. 120, p. 1.) He explained as follows:

> 6. Both my investigator and I were well aware of petitioner's claims that the tape(s) had been "tampered" with. We reviewed the tapes with this in mind. On

> their face there was no objective evidence that this had occurred. The volume and intensity of the actual recordings did not fluctuate at all (within the audible range of the human ear), and the context and speech patterns of both the victim and petitioner were unremarkable and followed a clear, understandable dialogue completely consistent with the questions posed to the petitioner by the victim. The syntax was unbroken, the unique characteristics of speech of both the victim and the petitioner remained unwavering throughout the entire recording. On its face, the audio recording of the pretext hone call presented itself as solid evidence.
>
> 7.  Accordingly, based on my professional experience and judgment, I advised petitioner that the pretext phone call would be presented at trial if he maintained his trial status. I told petitioner that exclusion of the pretext phone call based on petitioner's belief that it had been tampered with was a meritless claim that I could not make to the Court in good faith. Therefore, I did not object to the admission of the recordings of the pretext phone call or the interview petitioner had with law enforcement.

(Resp. Ex. No. 120, p. 2.) Coran noted that the trial court agreed to set over sentencing to allow the recordings to be analyzed, the engagement of the expert Dr. Begault to analyze the tapes, the expert's conclusion that they had not been tampered with, and that this information was relayed to the court before sentencing. (Resp. Ex. No. 120, p. 3.) The state also submitted Dr. Begault's report containing the analyses and conclusions discussed above. (Resp. Ex. No. 122.)

The PCR court reviewed the evidence, and after finding Coran's testimony credible and Breece not credible, determined that Breece failed to establish the merits of his claim as follows:

> Petitioner has not proven that his trial attorney failed to exercise reasonable professional skill and judgment when he failed to object to the introduction of the recordings of the phone call and police interview at trial. Trial counsel was aware of Petitioner's claim of tapering and evaluated the recordings and the discovery with that in mind. Trial counsel found no evidence of tampering. Trial counsel correctly felt that it would be meritless to object to the recordings when there was no evidence, other than Petitioner's assertion, to support the claim of tampering. Counsel acted reasonably in making his strategic decision to not object to the recordings at trial. In addition, after plea and before sentencing, trial counsel had the recordings analyzed by and [sic] expert who found no evidence of tampering.

> Petitioner has also failed to prove prejudice. Petitioner has not proven that objections to the recordings, if made, would have been granted by the trial court. There was no basis for the trial court to grant the objection. Had the objections been made and denied, Petitioner would have been in the same position he found himself in when he decided to take the plea offer. If the expert evaluation had been done sooner, the outcome would have been the same. Petitioner has failed to prove that if the objections had been made he would not have entered his guilty pleas.

(Resp. Ex. No. 124, p. 2.)

Breece has not demonstrated that the PCR court made unreasonable factual determinations or unreasonably applied federal law to reject his claim. In the PCR court, other than his own unsupported assertions, Breece presented no evidence that the recordings had been altered.[5] In fact, the only evidence about the tapes was the expert report prepared by Dr. Begault, who found no indications that the tapes had been altered. And the PCR court found not credible Breece's testimony that he would not have changed his plea if trial counsel had objected to the tapes before they were played, a factual finding that this court must defer to in the absence of clear and convincing evidence to the contrary. Given the facts before it, the PCR court reasonably concluded that Breece failed to demonstrate that trial counsel performed deficiently or that Breece would have opted to proceed to trial had counsel made objections to admission of the recordings. As such, Breece is not entitled to habeas corpus relief.

---

[5] Breece attached documents to his petition in this case, including statements from his brother and sister about conversations they allegedly had with the victim about the contents of the pretext call. Because those statements were not before the PCR court, however, they cannot be considered in connection with Breece's claim before this court. *See Cullen v. Pinholster*, 563 U.S. 170, 182-83 (2011) ("It would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court.").

Page 19 – FINDINGS AND RECOMMENDATION
*Breece v. State of Oregon*, 2:19-cv-00866-AR

## CONCLUSION

For the above reasons, Breece's "Petition for Writ of Habeas Corpus" (ECF No. 1) should be DENIED and a judgment of dismissal should be entered. A certificate of appealability should be denied as Breece has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

## SCHEDULING ORDER

The Findings and Recommendation will be referred to United States District Judge Adrienne Nelson. Objections, if any, are due within fourteen days. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due within fourteen days. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED: March 26, 2025

_____
JEFF ARMISTEAD
United States Magistrate Judge